

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE COMPANY,

    Plaintiff,

    -against -

GREKA OIL & GAS, INC. and
VINTAGE PETROLEUM, INC.,

    Defendants,
------------------------------------------------------------x

Civil Action No.

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, American International Specialty Lines Insurance Company ("AISLIC"), by and through its attorneys, Sedgwick, Detert, Moran & Arnold LLP, as and for its Complaint against Defendants, Greka Oil & Gas, Inc. ("Greka Oil") and Vintage Petroleum, Inc. ("Vintage Petroleum") (collectively referred to as "Defendants"), alleges upon knowledge as to its own acts and upon information and belief as to the acts of others, as follows:

## NATURE OF THE ACTION

1.    This action seeks a declaratory judgment with respect to Pollution Legal Liability Select Clean-Up Cost Cap Insurance Policy No. 8087804 (the "AISLIC Policy") issued by AISLIC to Greka Energy Corporation ("Greka Energy") (n/k/a Greka Oil) for the period June 26, 2002 to June 26, 2007 (the "Policy Period").

2.    AISLIC issued the AISLIC Policy to Greka Oil. The AISLIC Policy listed the address of Greka Oil as 630 5th Avenue, Suite 501, New York, New York.

NY/531294v1

3. The AISLIC Policy provided coverage for the clean up of pre-existing and/or new pollution conditions on certain insured properties listed in the Policy, and indemnity for property damage resulting from pollution conditions on or under those properties.

4. On or about August 5, 2004, Greka Oil and Vintage Petroleum were sued in an action entitled Wells Fargo Bank, N.A. v. Vintage Petroleum, Inc., pending in the Superior Court of California, County of Santa Barbara, Case No. 1155864 ("Underlying Action").

5. The Underlying Action arises out of oil and gas leases to which the underlying plaintiffs and Greka Oil and/or Vintage Petroleum were parties. The underlying plaintiffs have sought damages and other relief associated with alleged environmental contamination on the property subject to the oil and gas leases, and confirmation of the termination of the oil and gas leases for alleged failure to remedy defaults under the leases, including the alleged failure to remediate environmental contamination.

6. An actual and ripe controversy exists concerning the parties' rights and obligations under the AISLIC Policy as it pertains to the Underlying Action.

7. AISLIC now seeks a declaration holding that the AISLIC Policy should be rescinded or, alternatively, does not provide coverage for the claims asserted in the Underlying Action.

**PARTIES**

8. AISLIC is a corporation organized and existing under the laws of Illinois, with a principal place of business located in New York, New York. AISLIC is engaged in the business of providing liability insurance.

9. Upon information and belief, Greka Oil is a corporation organized and existing under the laws of Colorado, with a principal place of business in Santa Maria, California, and is

the successor-in-interest of Greka Energy. Greka Oil is engaged in the business of oil and gas production, exploration, and development.

10. Upon information and belief, Vintage Petroleum is a corporation organized and existing under the laws of Delaware, with a principal place of business located in Tulsa, Oklahoma. Vintage Petroleum is engaged in the acquisition, exploration, and exploitation of oil and gas properties and the marketing of natural gas and crude oil.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

12. This Court has personal jurisdiction over Greka Oil because it entered into an insurance contract with AISLIC in New York.

13. This Court has personal jurisdiction over Vintage Petroleum because, upon information and belief, it does substantial business in the City, County, and State of New York.

## FACTUAL ALLEGATIONS

### *The Disputes In The Underlying Action*

14. In the Underlying Action, the purported Insured Property at issue has been referred to as the "Cat Canyon Property."

15. As alleged in the Underlying Action, Wells Fargo Bank, N.A. ("Wells Fargo") and Union Bank of California, N.A. ("Union Bank") are the Trustees of the mineral and surface estate of the Cat Canyon Property.

16. On or about December 1, 1988, the Trustees allegedly entered into three oil and gas leases with Shell Western E&P, Inc. ("SWEPI") pertaining to the Cat Canyon Property.

17. As allegedly set forth in the leases – referred to in the Underlying Action as the New United California Lease, the New Bradley Lease, and the New California Lease (the "Cat Canyon Leases") – the lessee was prohibited from assigning the Cat Canyon Leases or any interest therein without the consent of the lessors, *i.e*, the Trustees.

18. In 1992, SWEPI allegedly assigned its interest in the Cat Canyon Leases to Vintage Petroleum.

19. The Trustees allegedly signed a written consent to assign the Cat Canyon Leases from SWEPI to Vintage Petroleum.

20. From 1998 through 2001, Wells Fargo allegedly served as a co-trustee-lessor with respect to certain other oil and gas leases not involving the Cat Canyon Property, in which the lessee was a predecessor company of Greka Oil. According to Wells Fargo, it experienced numerous problems in collecting royalty payments under those other oil and gas leases from the Greka Oil predecessor during that time period.

21. In 1999, Vintage Petroleum allegedly sought the consent of the Trustees to assign the Cat Canyon Leases to Greka Oil.

22. Wells Fargo allegedly refused to consent to the assignment of the Cat Canyon Leases to Greka Oil.

23. In May 2001, Vintage Petroleum allegedly again sought the consent of the Trustees to assign the Cat Canyon Leases to Greka Oil.

24. In June 2001, Union Bank allegedly consented to the assignment of the Cat Canyon Leases to Greka Oil.

25. In or about June 2001, Wells Fargo allegedly declined to consent to the assignment of the Cat Canyon Leases to Greka Oil because: (a) of its prior experience with

Greka Oil in attempting to collect royalty payments; and (b) the income from the Cat Canyon Leases would not cover the cost of plugging abandoned oil wells and performing environmental clean up.

26.  On or about July 1, 2002, Greka Oil allegedly obtained possession of the Cat Canyon Leases without the consent of Wells Fargo.

27.  On or about July 15, 2002, Vintage Petroleum allegedly assigned the Cat Canyon Leases to Greka Oil.

28.  The assignment of the Cat Canyon Leases allegedly included an agreement whereby Greka Oil would indemnify Vintage Petroleum for any claim based upon a failure to obtain consents to the Lease assignment. Greka Oil also allegedly agreed to assume the clean-up operations at the Cat Canyon Property, which costs have since been estimated to be approximately $60 million.

29.  In October 2002, the Trustees allegedly issued a Notice of Default indicating that the assignment of the Cat Canyon Leases to Greka Oil constituted a default of the Leases.

30.  In March 2003, the Trustees allegedly issued a Notice of Termination of the Cat Canyon Leases due to the improper assignment to Greka Oil.

*The AISLIC Policy*

31.  Greka Oil applied for the AISLIC Policy by completing a Pollution Legal Liability Application (the "Pollution Application") and a Cleanup Cost Cap Insurance Application (the "Cleanup Application") dated December 19, 2001.

32.  In the Pollution Application, Greka Oil responded "No" to an inquiry requesting whether Greka Oil knew of any facts or circumstances which may reasonably be expected to result in a claim or claims being asserted against it for environmental cleanup or response.

33.     In the Pollution Application, Greka Oil represented that the responses in the application were true and that no material facts were suppressed or misstated.

34.     Upon information and belief, Greka Oil was aware of environmental contamination on the Cat Canyon Property at the time it completed the Pollution Application, and knew that this contamination could reasonably give rise to a Claim that would fall within the scope of the AISLIC Policy.

35.     The AISLIC Policy had an inception date of June 26, 2002.

36.     The AISLIC Policy was issued to Greka Oil as the Named Insured.

37.     Pursuant to the "Schedule of Insured Properties, Coverages, and Coverage Section Limits and Deductibles Endorsement" of the AISLIC Policy, the list of Insured Properties included, *inter alia*, a reference to "Cat Canyon Field," which for purposes of this Complaint means the Cat Canyon Property.

38.     Pursuant to Endorsement No. 2 of the AISLIC Policy, entitled "Additional Insured(s) Endorsement," Vintage Petroleum was added as an additional insured under Coverages A through F of the Policy, but only in connection with claims in which: (a) Vintage Petroleum's alleged liability arose out of Greka Oil's ownership, operation, maintenance, or use of the Insured Properties; and (b) Vintage Petroleum was named as a co-defendant with Greka Oil in a suit alleging that Vintage Petroleum was liable for Greka Oil's ownership, operation, maintenance, or use of the Insured Properties.

39.     The AISLIC Policy contained insuring agreements consisting of Coverages A to L, as set forth below.

40.     Pursuant to Coverage A of the AISLIC Policy, entitled "On-Site Clean-Up of Pre-Existing Conditions," AISLIC agreed to pay on behalf of the Defendants herein those clean-up

costs which resulted from pollution conditions on or under the Cat Canyon Property that had commenced prior to the June 26, 2002 inception date of the Policy, but only if, *inter alia*, such pollution conditions were discovered by the Defendants herein during the Policy Period.

41.    Also under Coverage A, AISLIC agreed to pay on behalf of the Defendants herein those indemnity and defense expenses that they became legally obligated to pay as a result of claims for clean-up costs resulting from pollution conditions on or under the Cat Canyon Property that had commenced prior to the June 26, 2002 inception date of the Policy, provided that such claims were first made against them during the Policy Period.

42.    Pursuant to Coverage B of the AISLIC Policy, entitled "On-Site Clean-Up of New Conditions," AISLIC agreed to pay on behalf of the Defendants herein those clean-up costs resulting from pollution conditions on or under the Cat Canyon Property that had commenced on or after the June 26, 2002 inception date of the Policy, but only if, *inter alia*, such pollution conditions were discovered by them during the Policy Period.

43.    Also under Coverage B, AISLIC agreed to pay on behalf of the Defendants herein those indemnity and defense expenses that they became legally obligated to pay as a result of claims for clean-up costs resulting from pollution conditions on or under the Cat Canyon Property that had commenced on or after the June 26, 2002 inception date of the Policy, provided that such claims were first made against them during the Policy Period.

44.    Pursuant to Coverage C of the AISLIC Policy, entitled "Third-Party Claims for On-Site Bodily Injury and Property Damage," AISLIC agreed to pay on behalf of the Defendants herein those indemnity and defense expenses that they became legally obligated to pay as a result of claims for bodily injury or property damage resulting from pollution conditions on or under

the Cat Canyon Property, provided that such bodily injury or property damage took place while the person injured or property damaged was on the Cat Canyon Property.

45. Coverages D, E, and F of the AISLIC Policy are not applicable as they pertain to claims for off-site clean-up costs and property damage which, upon information and belief, are not at issue in the Underlying Action. Furthermore, Coverages G, H, I, and J of the AISLIC Policy are not applicable because they were not purchased from AISLIC by Greka Oil.

46. Pursuant to Coverage K of the AISLIC Policy, entitled "Known Pollutants," AISLIC agreed to pay on behalf of Greka Oil those costs in excess of the $1,198,400 self-insured retention that Greka Oil incurred for the clean up of pollutants identified in the "Remedial Plan," which was defined in the Policy as: (a) the "Environmental Schedule" dated July 9, 2001; and/or (b) the e-mail entitled "Well [Abandonment] Program" dated August 2, 2001.

47. Pursuant to Coverage L of the AISLIC Policy, entitled "Unknown Pollutants," AISLIC agreed to pay on behalf of Greka Oil those costs in excess of the $1,198,400 self-insured retention that Greka Oil incurred for the clean up of pollutants different from those identified in the "Remedial Plan," provided that, *inter alia*: (a) the pollutants were first discovered pursuant to the execution of the "Remedial Plan;" (b) the pollutants originated from the Cat Canyon Property; and (c) the clean up occurred between the June 26, 2002 inception date and the June 26, 2007 end date of the Policy.

48. The AISLIC Policy contained several exclusions of coverage, as set forth below.

49. The AISLIC Policy did not provide coverage for costs or exposures arising from pollution conditions or pollutants arising out of Greka Oil's intentional, willful, or deliberate noncompliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency.

50. The AISLIC Policy did not provide coverage for costs or exposures arising out of pollution conditions or pollutants existing prior to the June 26, 2002 inception date, and known by Greka Oil and not disclosed in the application for the Policy.

51. The AISLIC Policy did not provide coverage for costs or exposures arising out of treatment or disposal of pollution conditions that constituted hazardous waste (as defined by Code of Federal Regulations Title 40, Sections 260 through 265), which were contained in the soil, groundwater, surface water, and/or air at the Cat Canyon Property.

52. The AISLIC Policy did not provide coverage for costs arising out of pollution conditions on or under the Cat Canyon Property if such pollution conditions were identified or characterized in any environmental report, assessment, or due diligence document, and were not identified in: (a) the "Environmental Schedule" dated July 9, 2001; and/or (b) the e-mail entitled "Well [Abandonment] Program" dated August 2, 2001.

53. The AISLIC Policy did not provide coverage for costs due to or arising from decommissioning and disposal of oilfield-related equipment, such as, but not limited to, pumping equipment, pipelines, concrete pads, tanks, gas plants, and/or concrete.

54. The AISLIC Policy contained several conditions of coverage, as set forth below.

55. The AISLIC Policy required that the Defendants herein cooperate with AISLIC and provide all reasonable assistance in the investigation and defense of claims or the evaluation of clean-up costs.

56. The AISLIC Policy provided that it would be void as of its June 26, 2002 inception if Greka Oil willfully concealed or misrepresented any fact or circumstance which was material to the granting of coverage under the Policy, the description of the Cat Canyon Property, or the interest of the Defendants therein.

57. The AISLIC Policy provided that AISLIC could cancel the Policy due to: (a) any material misrepresentation by the Defendants herein; (b) Defendants' failure to comply with the material terms, conditions, or contractual obligations under the Policy; and/or (c) a change in operations at the Cat Canyon Property during the Policy Period which materially increased the risk covered under the Policy.

58. By accepting the AISLIC Policy, Greka Oil agreed that: (a) the statements made in the declarations, application, and report/worksheet constituted its own agreements and representations; (b) the Policy had been issued in reliance upon the truth of such representations; and (c) the Policy embodied all agreements existing between the Defendants and AISLIC.

59. Due to the limited information provided by the Defendants herein to AISLIC, it cannot yet be determined whether other terms, conditions, limitations, and/or exclusions of the AISLIC Policy may be implicated by the allegations set forth in the Underlying Action and, therefore, AISLIC reserves the right to assert such additional terms, conditions, limitations, and/or exclusions based upon facts ascertained through discovery, all of which are specifically reserved by AISLIC along with any and all other rights, remedies, and defenses under the AISLIC Policy and at law.

### *The Trustees' Claims Against The Defendants In The Underlying Action*

60. As set forth in the complaint in the Underlying Action, the Trustees sought: (a) damages and other relief associated with environmental contamination on the Cat Canyon Property; and (b) termination of the Cat Canyon Leases for failure to remedy several defaults under the Leases, including the failure to remediate the environmental contamination.

61.    The Trustees' complaint alleged that the 2001 assignment of the Cat Canyon Leases from Vintage Petroleum to Greka Oil constituted a default and material breach of the Cat Canyon Leases because the Trustees did not consent to the assignment.

62.    The Trustees further alleged that Greka Oil's possession of the Cat Canyon Property and operations on the Property are without the Trustees' consent, and in defiance of the demand of the Trustees that Greka Oil cease its trespass on the Trustees' property and its conversion of the Trustees' oil and gas.

63.    Furthermore, the Trustees alleged that Greka Oil has converted an existing oil field office on the Cat Canyon Property to its own use as a corporate office, supporting unrelated operations having nothing to do with the property. According to the Trustees, this excess use constitutes a further breach of the Cat Canyon Leases.

64.    The Trustees claimed that there exists contaminated soil on the Cat Canyon Property in violation of laws prohibiting the discharge of petroleum, petroleum products, hazardous substances, and industrial wastes, and that the discharges of these substances on the Cat Canyon Property were unlawful at the time the discharges occurred.

65.    In the first three causes of action asserted in the Trustees' complaint, they allege that Vintage Petroleum breached the Cat Canyon Leases.

66.    In their fourth cause of action, the Trustees claimed that the Defendants herein had created a permanent misuse on the Cat Canyon Property by: (a) wrongfully causing environmental contaminants to be released, discharged, or maintained on, within, or under the Cat Canyon Property; and (b) wrongfully allowing the continued existence of oil and gas wells, pipelines and flow lines, facilities, foundations, oil field debris and junk, and other dangerous conditions. The Trustees contended that this wrongdoing interfered with the free use and

comfortable enjoyment of the land, thereby causing damage to the Trustees in that they will need to incur costs to assess, evaluate, and test the conditions resulting from the permanent nuisance and to repair and restore the Cat Canyon Property to its original condition.

67. The fifth cause of action alleged by the Trustees against the Defendants herein repeated and realleged the fourth cause of action, and further alleged that the conduct constituted a continuing nuisance.

68. In the sixth and seventh causes of action, the Trustees repeated and realleged the above-referenced nuisance claims, and further contended that the conduct constituted a permanent trespass (sixth) and continuing trespass (seventh).

69. The Trustees alleged in the eighth cause of action that Greka Oil had conducted drilling operations on the Cat Canyon Property and removed oil and gas without the consent of the Trustees, thereby giving rise to a wrongful conversion for which the Defendants are liable.

70. The Trustees repeated and realleged the above-referenced conversion claim in the ninth cause of action of their complaint, and contended that the misconduct of the Defendants herein had reduced the value of the Cat Canyon Property and deprived the Trustees of the value of the converted oil and gas, thereby giving rise to a waste on the Property, for which the Defendants are liable.

71. In the tenth cause of action, the Trustees alleged that the Cat Canyon Leases had been terminated and Defendants herein had no right to extract oil or gas from the Cat Canyon Property. In so alleging, the Trustees further contended that because the Defendants herein had wrongfully occupied and operated on the Property, they had become unjustly enriched, and should therefore have to pay to the Trustees the value of their wrongful occupation and extraction.

72. The Trustees alleged in the eleventh cause of action that Greka Oil should be ejected from the Cat Canyon Property and that the Trustees are entitled to exclusive possession of the Property.

73. In the twelfth, thirteenth, and fourteenth causes of action, the Trustees have sought declaratory relief against the Defendants herein, declaring that: (a) the purported 2001 assignment to Greka Oil had no force and effect because the Trustees did not consent to it; (b) the Cat Canyon Leases are terminated as a result of the default of the Leases; and (c) the Defendants herein had no right to occupy or operate on the Cat Canyon Property (with the exception of Vintage Oil with respect to its obligations to restore the Property upon termination of the Leases).

## FIRST COUNT

74. AISLIC incorporates by reference each of the allegations of paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. Upon information and belief, Greka Oil failed to disclose the environmental contamination that existed on the Cat Canyon Property to AISLIC at any time prior to the effective date of the AISLIC Policy

76. Greka Oil's failure to disclose the environmental contamination that existed on the Cat Canyon Property to AISLIC constituted a misrepresentation and/or non-disclosure of a material fact relating to the risk(s) which AISLIC was to insure.

77. If Greka Oil had disclosed the environment contamination to AISLIC prior to the inception of the AISLIC Policy, AISLIC would not have issued the AISLIC Policy.

78. Because of Greka Oil's misrepresentation and/or non-disclosure of this material fact, which induced AISLIC to issue the AISLIC Policy, AISLIC is entitled to rescind the AISLIC Policy *ab initio*.

79. Accordingly, AISLIC is entitled to a declaration that (a) it is entitled to rescind the AISLIC Policy, (b) the AISLIC Policy is null and void *ab initio*, and (c) it has no obligation to provide coverage for the Underlying Action, and/or any other Claims made during the Policy Period.

## SECOND COUNT

80. AISLIC incorporates by reference each of the allegations of paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81. The causes of action alleged in the complaint in the Underlying Action are not covered under Coverages A through L of the AISLIC Policy.

82. AISLIC is entitled to a declaration that the AISLIC Policy does not provide coverage for the causes of action alleged in the Complaint in the Underlying Action.

## THIRD COUNT

83. AISLIC incorporates by reference each of the allegations of paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84. The causes of action alleged in the complaint in the Underlying Action are precluded from coverage by the applicable exclusions contained in the AISLIC Policy.

85. AISLIC is entitled to a declaration that the AISLIC Policy precludes coverage for the causes of action alleged in the Complaint in the Underlying Action.

## FOURTH COUNT

86. AISLIC incorporates by reference each of the allegations of paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87. The causes of action alleged in the complaint in the Underlying Action are not covered due to the breach or violation of the conditions and limitations set forth in the AISLIC Policy by Greka Oil and/or Vintage Petroleum.

88. AISLIC is entitled to a declaration that the AISLIC Policy does not provide coverage for the causes of action alleged in the Complaint in the Underlying Action due to the breach or violation of the conditions and limitations set forth in the AISLIC Policy by Greka Oil and/or Vintage Petroleum.

## FIFTH COUNT

89. AISLIC incorporates by reference each of the allegations of paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90. The causes of action alleged in the complaint in the Underlying Action are precluded from coverage under applicable law and public policy.

91. AISLIC is entitled to a declaration that applicable law and public policy precludes coverage for the causes of action alleged in the complaint in the Underlying Action.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a declaration and judgment in its favor:

A. Declaring that, for the reasons set forth in Count I, the AISLIC Policy is void *ab initio*, subject to the return of premium if required;

B. Declaring that, for the reasons set forth in Count II, insurance coverage is not available under the AISLIC Policy for any causes of action alleged against Greka Oil and/or

Vintage Petroleum in the complaint in the Underlying Action;

C.  Declaring that, for the reasons set forth in Count III, insurance coverage is not available under the AISLIC Policy for any causes of action alleged against Greka Oil and/or Vintage Petroleum in the complaint in the Underlying Action;

D.  Declaring that, for the reasons set forth in Count IV, insurance coverage is not available under the AISLIC Policy for any causes of action alleged against Greka Oil and/or Vintage Petroleum in the complaint in the Underlying Action;

E.  Declaring that, for the reasons set forth in Count V, insurance coverage is not available under the AISLIC Policy for any causes of action alleged against Greka Oil and/or Vintage Petroleum in the complaint in the Underlying Action;

F.  Awarding AISLIC such additional declaratory and other relief as shall be found to be appropriate under the circumstances; and

G.  Awarding AISLIC its fees and costs incurred in prosecuting this action.

Dated: New York, New York
       August 27, 2008

SEDGWICK, DETERT, MORAN & ARNOLD, LLP

_____
Lawrence Klein (LK2875)
Jeffrey Winn (JW6071)
J. Gregory Lahr (JL9969)
Attorneys for Plaintiff American International
Specialty Lines Insurance Company
125 Broad Street, 39th Floor
New York, NY 10004-2400
Telephone: (212) 422-0202
Facsimile: (212) 422-0925